UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| MICHAEL JOSEPH BORYS, by his appointed guardian, MICHAEL JAY BORYS, | 15-cv-8972 |
| PLAINTIFF, | Hon. Judge Thomas M. Durkin |
| v. | Hon. Mag. Judge Sheila Finnegan |
| COOK COUNTY SHERIFF THOMAS DART, ET. AL., | |
| DEFENDANTS. | |

## MOTION TO APPROVE SETTLEMENT

1. This is a disability discrimination case brought under the Americans with Disabilities Act, Title I, 42 U.S.C. § 1211, and the Rehabilitation Act, 29 U.S.C. §794, on behalf of Michael Borys alleging the failure to provide a reasonable accommodations in the Cook County Jail; as well as alleging violation of due process under 42 U.S.C. Section 1983 for deliberate indifference to his serious medical needs; and related state law claims of negligence and willful and wanton conduct.

2. The parties attended a settlement conference with Magistrate Finnegan on August 3, 2017. After the full day of negotiations, and with the continued assistance of Judge Finnegan, Plaintiff and Defendant County reached an agreement to settle the case for $4,750,000.00, inclusive of fees and costs, with Defendant County's acceptance dependent on approval by the Cook County Board. On October 23, 2017, the Board's litigation subcommittee voted to approve the settlement. The full Board will vote on whether to accept the recommended settlement at its November meeting.

3. Plaintiff now moves the Court to approve the reasonableness of the settlement and distribution pursuant to Local Rule 17.1 and the Illinois Probate Act, 755 Ill. Comp. Stat. 5/19–8. Upon a finding of reasonableness in this case, Plaintiff will seek leave of the Probate Court for final authorization for the settlement on behalf of Michael Joseph Borys (henceforth, "Michael").

4. This case was filed two years ago, on October 9, 2015. The parties engaged in aggressive discovery and motion practice. More than a dozen depositions were taken. Hundreds of pages of documents were produced by the defense and thousands of pages of medical records produced by Plaintiff. Plaintiff's retained experts included three damages experts (a neurosurgeon, a neuropsychologist, and a registered nurse and life care planner) and one liability expert, a epidemiologist who analyzed volumes of data produced by the County and the Sheriff to show systemic delays in the communication of detainees' needs for lower bunk accommodations from the County medical staff to the Sheriff's correctional department.

5. Because Michael has been adjudicated a person with a disability in need of a guardian, the law does not permit him to enter the settlement on his own behalf. As a result, this Court's local rules and the Illinois Probate Act require court approval before the settlement can be finalized. N.D. Ill. L.R. 17.1; 755 Ill. Comp. Stat. 5/19–8.

**The Legal Standard for Review and Settlement Approval**

6. The Seventh Circuit has explained that the assessment required by the Court's Rule 17.1 is of the attorneys' fee paid from the settlement and the settlement itself, and whether both are reasonable and within the best interest of the minor or person with a disability (a minor in the *Goesel* case). *Goesel v. Boley Int'l (H.K.) Ltd.*, 806 F.3d 414 (7th Cir. 2015).

7. The Court is required to assess the reasonableness of the fees, but the review is limited to safeguarding the interest of the minor. *Goesel,* 806 F.3d at 417. In *Goesel,* parents

brought and settled a personal injury case on behalf their minor child. The retainer agreement provided for a contingent fee payment to the retained attorneys, as well as reimbursement of all case costs. The case settled and after the deductions for fees and costs, the plaintiffs received 42% of the total recovery. The district court ordered that the fee arrangement should be modified to take the litigation expenses off top, prior to the contingency fee. *Id.*

8. The Court of Appeals reversed, finding that the district court deviated from the appropriate assessment by "rewriting the terms of the representation after the fact." *Id.* at 422-3. The *Goesel* Court reviewed the objective reasonableness of the fees under the retainer agreement and they "easily passe[d] muster" noting the time and resource intensive litigation, with expansive discovery and numerous expert. *Id*. at 421.

9. The measures of reasonableness outlined in *Goessel* include the prevailing market rates and a qualitative analysis of the reasonableness of the fees considering "a variety of additional factors such as the skill and standing of the attorneys, the nature of the case, the novelty and/or difficulty of the issues and work involved, the importance of the matter, the degree of responsibility required, the usual and customary charges for comparable services, the benefit to the client, and whether there is a reasonable connection between the fees and the amount involved in the litigation." *Goesel*, 806 F.3d t 421 quoting *LaHood v. Couri,* 236 Ill.App.3d 641, N.E.2d 1165, 1171 (1992) (citations omitted).

**The Attorneys' Fees are Reasonable
and the Settlement is in Michael's Best Interest**

10. The settlement of this case for $4,750,000.00 is reasonable and in the best interest of Michael.

11. The retainer agreement entered into by Mr. Borys (Michael's father and guardian) and Plaintiffs' counsel provides for a contingency fee in the amount of 40% of the total amount

recovered, plus re-imbursement of all out-of-pocket expenses from any recovery. Under this agreement, if no recovery was obtained either by verdict or settlement, no fees or costs would be reimbursed to the attorneys. Under this agreement, the contingency fee is $1,900,000.00. The out-of-pocket costs incurred in the case total $48,505.00. These costs include depositions, transcripts and four retained experts. After fees and costs, Michael Borys will receive a total of $2,801,495.00.

12. The relevant market comparison here is the Chicago area civil rights practice. In this market, a forty percent contingency fee is standard practice. *See Montanez v. Simon*, 755 F.3d 547, 554 (7th Cir. 2014) (discussing evidence showing contingency fee agreements in civil rights cases to be "usually 40%"); *Young v. Cty. of Cook*, No. 06 C 552, 2017 WL 4164238, at *4 (N.D. Ill. Sept. 20, 2017) (Loevy & Loevy's "standard contingency fee is 40% of the gross recovery for civil rights cases"). *See also Kirchoff v. Flynn*, 786 F.2d 320, 323 (7th Cir. 1986) (in a police misconduct case, citing a 40% contingency as the "customary fee" for federal tort litigation).[1]

13. The contingency rate reflects the high risk, difficulty, and cost of federal civil rights litigation. Here those factors are significant. This litigation carried with risk of non-payment to counsel, it required substantial resources—both in time and expenses—to litigate, and the quality of Plaintiff's counsel work throughout the case was high. All of these can be demonstrated, for example, in any one of the eight discovery motions that Plaintiff was forced to file in order to prove their case. *See* Docket Nos. 48, 52, 78, 80, 84, 90, 92, and 96.

---

[1] Another example is *Duran v. City of Chicago,* No. 06-6469 (N.D. Ill. J. Holderman). In that case, the jury awarded a young child and her parents damages totaling $4.2 million for violations of their due process rights. While the case was on appeal, the parties reached a settlement of $2,550,000.00. The Court approved the settlement with the attorneys' fee of 45% pursuant to the contract, plus costs, leaving the clients (a minor child and her parents) with the amount of $1,381,501.00. *See* Doc. No. 285 (motion), 285-2 (distribution), and 287 (Court Order approving settlement).

14. Finally, this settlement is in the best interest of Michael Borys. The settlement of $4,750,000.00, with a net payment of $2,801,495.00 to Michael, will provide for Michael's wellbeing throughout his life. The projected costs of Michael's future damages – medical needs, care, and other expenses – were explored by experts for both parties in this litigation. This settlement falls squarely within the parameters set forth by those experts to be sure that Michael's future needs, as well as past damages, will be provided. Michael's guardian is working to establish a Special Needs Trust, which will protect Michael's assets so that these funds be both invested and utilized throughout his lifetime.[2]

WHEREFORE Plaintiff respectfully requests that this Court enter an order approving this settlement. An agreed order is attached as Exhibit A hereto.

RESPECTFULLY SUBMITTED,

/s/ Amanda Antholt
One of Plaintiff's Attorneys

Amanda Antholt
EQUIP FOR EQUALITY
200 North Michigan Avenue, Suite 300
Chicago, IL 60602
(312) 895-7330
amanda@equipforequality.org

---

[2] On August 10, 1993, Congress enacted the Omnibus Reconciliation Budget Act of 1993 (hereinafter "OBRA" which permits the guardians of a disabled person, of any age, to create a special needs trust using the disabled person's own assets as the corpus of the trust to shelter funds for the benefit of the disabled person. 42 USCA Sec. 1396p(d)(2)(A), (d)(4)(C). On July 26, 1994, Illinois enabling legislation was enacted mandating the Illinois Department of Public Aid to create rules for the consideration of trusts and similar legal instruments in the Department's determinations of person's eligibility for assistance. 305 ILCS 5/5-2.1.a. On February 28, 1995, Section 120.347(d)(2) of the Illinois Department of Public Aid's Administrative Code was enacted providing for the effectuation of the above stated trust. 89 Ill. Admin. Code. Sec. 120.347(d)(2). On July 14, 1995, Illinois legislators amended the Illinois Trust and Trustees Act to allow for the creation of such discretionary trusts. 760 ILCS 5/15.1.

Richard Dvorak
DVORAK LAW OFFICES, LLC
6262 Kingery Highway, Suite 305
Willowbrook, IL 60527
(312) 593-7146
richard.dvorak@civilrightsdefenders.com